IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASANTI T. COLLINS, *et al.*,

    Plaintiffs,

  v.

DISCOVER FINANCIAL SERVICES, *et al.*,

    Defendants.

Civil Action No. PX-17-03011

******

**MEMORANDUM OPINION**

On May 5, 2018, the Court granted in part and denied in part the motion to dismiss and to compel individual arbitration filed by Defendants Discover Financial Services, Discover Bank, Discovery Products, Inc., and U.S. Bank, N.A. (collectively, "Defendants"). ECF No. 21. Plaintiffs Asanti T. Collins and Bradley Clayton now move, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), for the Court to alter its judgment compelling arbitration. ECF No. 22. The Court now rules because no hearing is necessary. *See* D. Md. Loc. R. 105.6. Upon consideration of the parties' briefing, the Court DENIES Plaintiffs' motion.

**I.    Background**

The relevant facts are summarized in the Court's prior Memorandum Opinion, ECF No. 21. Plaintiffs both have Discover Card accounts. Plaintiffs initially filed this suit as a class action complaint in Montgomery County Circuit Court, alleging that various practices of and among the Defendants when seeking to collect on delinquent accounts are illegal under Maryland and federal consumer protection laws, and that Defendants violated certain other applicable Maryland regulations. Plaintiffs seek declaratory and injunctive relief (Counts I and II) and bring claims under various federal and state consumer protection and licensing statutes

1

(Counts III-IX), for unjust enrichment (Count X), and for other ancillary relief (Count XI). Defendants removed the action to this Court based on federal question jurisdiction.

Defendants then moved to compel individual arbitration as provided in Plaintiffs' cardmember agreements. In pertinent part, the agreements include arbitration provisions that permit either party to the agreement to elect to resolve any dispute arising from the use of Plaintiffs' Discover accounts through binding arbitration. The agreements also include a class action waiver, a mechanism for either party to reject proceeding by arbitration, a provision making clear that the Federal Arbitration Act ("FAA", 9 U.S.C. §§ 1-16) applies to any applicable arbitration proceedings and that arbitration shall proceed with the American Arbitration Association ("AAA") or JAMS,[1] in accordance with each institution's respective rules. ECF Nos. 5-3, 5-4.

Plaintiffs opposed arbitration, arguing that the Court should apply Maryland law rather than the FAA and find that Defendants waived the right to arbitrate by previously initiating collection actions against Plaintiffs in Maryland courts. The Court was left to decide whether the cardmember agreements that Plaintiffs signed, which expressly provided for arbitration in lieu of litigation, required the Plaintiffs to submit to individual arbitration under the FAA.

The Court analyzed the case under the FAA, found that the cardmember agreements compelled individual arbitration and ordered Plaintiffs to engage in arbitration in accordance with the arbitration clauses in their agreements. The Court declined to dismiss the Complaint, ordering instead that the case be stayed pending arbitration pursuant to 9 U.S.C. § 3. Plaintiffs thereafter timely moved for reconsideration, arguing that the Court should have first determined

---

[1] JAMS was formerly known as Judicial Arbitration and Mediation Services, Inc., but is now known simply as "JAMS." *Sakyi v. Estee Lauder Companies, Inc.*, 308 F. Supp. 3d 366, 388 n.4 (D.D.C. 2018).

whether the claims raised by Plaintiffs were within the scope of the arbitration agreement. ECF No. 22.

## II. Standard of Review

A motion for reconsideration filed within 28 days of the underlying Order is governed by Federal Rule of Civil Procedure 59(e). *See Katyle v. Penn. Nat. Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir. 2011). Courts recognize three limited grounds for granting a motion for reconsideration brought pursuant to Rule 59(e): (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not previously available, or (3) to correct a clear error of law or prevent manifest injustice. *See United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)), *cert. denied*, 538 U.S. 1012 (2003). However, a Rule 59(e) motion "may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pacific Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright, *et al.*, Federal Practice and Procedure § 2810.1, at 127–28 (2d ed. 1995)). "In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pacific Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright *et al*., *Federal Practice and Procedure* § 2810.1, at 124 (2d ed. 1995)).

## III. Analysis

Plaintiffs now argue, for the first time, that arbitration is not proper because Plaintiffs' claims are beyond the scope of the cardmember agreements. More particularly, Plaintiffs contend that the Court should have considered "whether the issues raised by Plaintiffs in their Complaint are arbitrable matters subject to the pertinent arbitration provisions in the first instance." ECF 22-1 at 2. In support, Plaintiffs highlight the Court's prior opinion which notes

that "[w]hether the agreements' arbitration provisions cover Plaintiffs' specific claims is a question best left for the arbitrator in the first instance." ECF No. 21 at 5 n. 2 (citing *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 527–28 (4th Cir. 2017)). Because Plaintiffs' claims center on alleged violations of Maryland Code, Business Regulation, § 7-401, Plaintiffs maintain that the Complaint allegations bear no relationship to the cardmember agreements and so the arbitration clause within the agreements is inapplicable. Failure to consider this contention, say Plaintiffs, is both clearly erroneous and manifestly unjust.

Although Plaintiffs' arguments as to scope are indeed belated, the Court takes this opportunity to clarify its prior opinion. Generally, the arbitrability of disputes is a "gateway question" that should be decided by the courts. *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84 (2002). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). As the Supreme Court has noted, this is because the question of who arbitrates arbitrability is "rather arcane," and "[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." *Id.* at 945.

That said, where the agreements explicitly incorporate JAMS or AAA rules, such provisions constitute "clear and unmistakable evidence" of intent to arbitrate arbitrability. *See, e.g., Simply Wireless, Inc,*, 877 F.3d at 528 ("Because the JAMS Rules expressly delegate arbitrability questions to the arbitrator, the district court erred in deciding whether Simply Wireless's claims fall within the scope of the parties' arbitration agreement."). *See also Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763–64 (3d Cir.) ("It

4

appears that virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (internal citations omitted)); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017) (collecting cases from multiple circuits); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("We agree with most of our sister circuits that the express adoption of [the AAA rules] presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[W]e hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.").

Here, Collins and Clayton agreed to just that. ECF No. 5-3 at 11 (Collins' agreement stating "arbitration shall be conducted [by either AAA or JAMS] in accordance with their procedures in effect when the claim is filed."); ECF No. 5-4 at 4 (Clayton's agreement stating "[a]rbitration must proceed only with [AAA] or JAMS. The rules for the arbitration will be those in this arbitration agreement and the procedures of the chosen arbitration organization . . ."). Plaintiffs' only retort to the plain language of their arbitration provisions is that the clauses do not reflect an intention to arbitrate arbitrability because their cardmember agreements were not "commercial contracts between sophisticated parties," as contemplated in *Simply Wireless*, 877 F.3d at 528. The Court is not persuaded.

As a general principle, parties to a contract are to be bound by its plain terms. *Faddis Concrete, Inc. v. Brawner Builders, Inc.*, No. ELH-15-3975, 2017 WL 4098739, at *6 (D. Md. Sept. 15, 2017). The cardmember agreements include AAA and JAMS rules which clearly state that issues of arbitrability to be determined by the arbitrator. Plaintiffs give no sound basis for this Court to find that certain of the provisions in the cardmember agreements are sufficiently

5

plain to bind them, yet others are not. Accordingly, Plaintiffs have provided the Court no reason to find otherwise. This determination is consistent with courts reaching similar questions involving "unsophisticated" parties. *See, e.g., Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (in suit by students against vocational school, "the parties' incorporation of the AAA Rules is clear and unmistakable evidence that they intended to allow an arbitrator to answer that question [of arbitrability]"). *See also Brennan*, 796 F.3d at 1130–31 ("[T]he vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent [to] do so without explicitly limiting that holding to sophisticated parties or to commercial contracts."); *Sakyi v. Estee Lauder Companies, Inc.*, 308 F. Supp. 3d 366, 379 (D.D.C. 2018) (incorporation of AAA rules into agreement between cosmetology student and school "makes the issue of arbitrability one for the arbitrator, not the court, to decide."). Accordingly, the Court defers the question of scope to the arbitrator, and expresses no opinion as to whether the claims brought by Plaintiffs have a "significant relationship" to the cardmember agreements. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc*., 96 F.3d 88, 94 (4th Cir. 1996). Plaintiffs' motion for reconsideration is therefore DENIED.

A separate Order follows.

12/7/2018 /S/
Date Paula Xinis
United States District Judge